IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCIS WILES AND JUDY T. WILES (REPRESENTATIVE), | |
| Plaintiff, | 4:13-CV-3014 |
| vs. | MEMORANDUM AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |
| FRANCELLA WILES AND JUDY T. WILES (REPRESENTATIVE), | |
| Plaintiff, | 4:13-CV-3063 |
| vs. | MEMORANDUM AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

   The claimants, Francis and Francella Wiles, were overpaid child's survivor insurance benefits by the Social Security Administration (SSA). They sought to have recovery of the overpayments waived pursuant to 42 U.S.C. § 404(b), but their requests were denied. Before the Court are their appeals from those decisions. The Court has considered the parties' filings and the administrative records, and will reverse the Commissioner's decision and remand this case with directions for the SSA to waive recovery of the overpayments.

## I. BACKGROUND

Francis, born July 30, 1990, and Francella, born March 11, 1992, are the youngest of four children. T18.[1] Their father, Terry Wiles, died on May 6, 1997. T18. On May 21, 1997, their mother, Judy Wiles, applied for survivor benefits on behalf of the four children, and asked for their benefits to be paid to her as representative payee, because they were minor children. T18-25.

On June 4, 2003, Judy was notified that the claimants' benefit amounts were being raised because the SSA had stopped paying another person on the record.[2] T26. On June 10, Judy called the SSA office in Lincoln, Nebraska, and spoke to a representative named Kevin, who told her that their benefit amounts were correct. T82, 149, 199, 202-03, 220-21. Judy called the SSA office again on August 1,[3] and a representative named Jeremy told her that the amounts were correct, and that a mother always gets lesser benefits than her children. T82, 199, 202-03, 220-21. She called again on August 14, and Jeremy gave her the same answer. T82, 147, 199, 202-03, 220-21.

On April 6, 2008, the SSA informed Judy of an overpayment of $13,241 for each claimant, for the period between June 2003 and March 2008. T27; case no. 4:13-cv-3063 T18. The claimants filed requests for reconsideration, explaining that "[t]he overpayment was not our fault. The benefits were sent to us and we did not know that we were being overpaid." T32-34. The SSA replied that "the reason you gave for completing that form indicates that you did not really want a reconsideration but only wanted information." T52. So, the SSA did not reconsider the determination, and directed Judy to contact an SSA office if she "really wanted a reconsideration of the determination made." T52. Judy, in turn, replied that the appeal form had been filled out by the claims representative at the SSA office in Omaha, Nebraska, who had refused to accept the appeal form Judy had already filled out. T56. Judy

---

[1] There are two appeals here, and thus, two administrative records. Unless otherwise noted, the Court will cite to the record in Francis' appeal, case no. 4:13-cv-3014. There has apparently been some confusion in creating the record in Francella's case: although the administrative documents are Francella's, the exhibits relate to Francis. This appears to have been the SSA's error, either in marking and admitting the exhibits or generating the record that was provided to this Court. *See,* T195-96; 42 U.S.C. § 405(g). But these proceedings have been parallel throughout, and the Court has no reason to believe that it is missing any documents that would change the reasoning or result. Nor is the Court inclined to inconvenience Francella any further because of the SSA's mistake: she has already been troubled more than she should have been by SSA errors.

[2] Presumably, one of the older siblings. For instance, one of the claimants' sisters had reached the age of 18 the previous November, and might have graduated from high school in May 2003, thus ending her right to benefits. *See* 42 U.S.C. § 402(d)(1)(F)(i).

[3] The record is not entirely clear about this date. *Compare* T82 *with* T148. But there is nothing in the record to suggest that the contact did not occur.

asked for a formal determination of whether the overpayment and payment amounts were correct. T56.

On August 27, 2009, Judy requested a waiver of overpayment recovery, describing her contacts with SSA representatives in 2003 regarding whether the benefit amounts were correct. T81-88. Francis, now an adult, made his own request on October 3. T98-105. According to the requests, Francis was in college and not employed at the time. He had about $10,000 in savings, and expenses of about $1,000 per month. T100-03. Francella was still in high school and was not employed, and had savings of about $25,000. T83-85. It was later established that those funds were an inheritance from a great-aunt that had been set aside for the claimants' college education. T198-201.

On February 17, 2010, the SSA denied the requests for waiver pending a "personal conference." T108. After the conference, the claims representative wrote that

> [s]ince Judy states that she contacted our office several times about the amounts to check if they were correct, she is partialy [sic] without fault. But, she is at fault for not returning the checks and following through to appeal the changes in the benefit checks, especially since she did not agree that the children were now receiving more than she was.

T113. The claims representative also wrote that she was denying the waiver because there were funds available to repay the overpayment. T113. On April 7, 2010, the SSA finally denied the waiver requests, stating that it could not "find [the claimants] without fault in causing the overpayment"[4] and that the claimants "can afford to repay the overpayment." T114.

The claimants requested an administrative hearing. T117. At the hearing, Judy explained how she had saved the inherited funds that made up Francis' and Francella's college funds; that she "wouldn't touch the savings" to pay ordinary expenses, and would "make sacrifices" instead. T198-200, 218, 229. Judy again explained to the ALJ how she had attempted, in 2003, to confirm with the SSA that the benefits being paid were correct. T199, 202-03, 220-21.[5] And she presented telephone bills to substantiate her testimony regarding those contacts with the SSA. T147-49.

---

[4] The administrative law judge (ALJ) has appropriately corrected this finding. T16. But even the initial determination is befuddling. It is not clear what the claims representative expected Judy to do, short of going to the SSA office with a wad of cash and shouting, "Shut up and take my money!"

[5] There was also some discussion of *another* SSA error, in that Francella's benefits had accidentally been terminated when she turned 18 even though she was still a student and

- 3 -

But the ALJ refused to waive recovery of the overpayments. T11-17; case no. 4:13-cv-3063 T15-21. The ALJ found that the claimants were without fault regarding the overpayment, but did not need their savings for ordinary and necessary living expenses. T16; case no. 4:13-cv-3063 T20. And according to the ALJ, there was no evidence that the claimants or Judy had "changed their financial positions to their detriment in reliance on the receipt of the erroneous benefits[,]" because the claimants "received less than $200 each month in error" and that it was "unlikely that one would change his position for the worse or relinquish a valuable right in reliance on receiving such a relatively small sum each month." T16; case no. 4:13-cv-3063 T20. So, after the Appeals Council denied their respective requests for review, each claimant was held liable for $10,853 that had been overpaid in error. T7-8; case no. 4:13-cv-3063 T7-8. Each claimant filed a pro se complaint with this Court seeking review of the administrative decision.[6] Filing 1; case no. 4:13-cv-3063 filing 1.

## II. STANDARD OF REVIEW

The Court reverses the findings of the Commissioner only if they are not supported by substantial evidence or result from an error of law. *See Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing § 405(g)); *see also Rodysill v. Colvin*, ___ F.3d ___, 2014 WL 1099686, at *1 (8th Cir. Mar. 21, 2014). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* In determining whether evidence is substantial, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence supports the Commissioner's conclusions, the Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome. *Id.*

## III. DISCUSSION

When the Commissioner of Social Security finds that a recipient of Social Security benefits has been overpaid, the Commissioner has been directed by Congress to recover the overpaid funds. § 404(a)(1); *see Rodysill*, 2014 WL 1099686, at *2. However, the Commissioner is not permitted to

---

had completed the appropriate paperwork. That error, at least, seems to have been resolved.

[6] Francis, Francella, and Judy have been acting *pro se* throughout the administrative process and these appeals. Generally, Judy has acted as representative for the claimants. *See* 20 C.F.R. 404.1705(b).

recover an overpayment of benefits from "any person who is without fault if such adjustment or recovery would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience." § 404(b); *Rodysill*, 2014 WL 1099686, at *2. An individual who has received an overpayment and who is without fault may request waiver of recovery based upon either of these prohibitions, 20 C.F.R. § 404.506, and in doing so, bears the burden of proof. *Rodysill*, 2014 WL 1099686, at *2.

### 1. DEFEATS THE PURPOSE OF TITLE II

Recovery of overpayment would defeat the purpose of Title II of the Social Security Act if it would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). "This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." *Id*. Ordinary and necessary expenses include fixed living expenses, medical expenses, support for dependents, and "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living." *Id*. So, recovery will defeat the purposes of Title II where the person from whom recovery is sought needs substantially all of his current income to meet current ordinary and necessary living expenses. 20 C.F.R. § 404.508(b).

The ALJ found that recovering the overpayments in this case would not defeat the purpose of Title II because the claimants had assets available that were not needed for their ordinary and necessary living expenses. T16. That finding, however, is not supported by substantial evidence and is inconsistent with the relevant administrative regulations and guidelines.

At the administrative hearing, the ALJ opined that the claimants might have to work part-time while they went to school, or take out student loans, to pay their college expenses. T210-11, 223-24. But the question posed by the administrative regulations is whether their *current income* was sufficient to meet their *current* ordinary and necessary living expenses. 20 C.F.R. § 404.508(b). The ALJ appears to have assumed that the claimants' savings were intended for college *tuition*, without asking a more fundamental question: what were the claimants using to pay their ordinary living expenses during their education? When the claimants applied for waiver of recovery, they were both unemployed students. T83. At the time of the administrative hearing, Francis was working 1 day a week, and there is no indication that Francella had obtained employment. T210. And both claimants had reached the age of 18 and graduated from high school, so they no longer had Social Security benefits to rely on. Nor was Judy working, or receiving Social Security benefits. T213. Thus, all the evidence in the record is that the

- 5 -

claimants were relying on their savings because their income at the time was insufficient to pay their ordinary and necessary expenses.

The ALJ's reasoning is also inconsistent with the Commissioner's Program Operations Manual System (POMS) guidelines, which, because they interpret regulations promulgated by the Commissioner, control unless they are inconsistent with the regulations or plainly erroneous. *Rodysill*, 2014 WL 1099686, at \*2. Under the POMS, assets are a financial resource that may be liquidated to repay an overpayment. POMS GN § 02250.125(A). And it is clear that in considering whether the person has "an income or financial resources sufficient for more than ordinary and necessary needs," 20 C.F.R. § 404.508(a), "a person's entire financial position should be considered." *Milton v. Harris*, 616 F.2d 968, 974 (7th Cir. 1980); *see also* POMS GN 02250.115(A)(4). But an asset which is generating income needed to meet ordinary and necessary living expenses is not to be considered. POMS GN 02250.125(B)(1)(c). And a recovery may be found to defeat the purpose of Title II if recovery would reduce a person's assets to below $3,000 for a person without dependents. POMS GN 02250.115(A)(4). "Assets are available to repay an overpayment to the extent that their total value exceeds the above amounts." *Id.* But, "[i]f income does not exceed adjusted expenses, recovery will defeat the purpose if recovery would cause assets to be reduced below these amounts." *Id.*

The $3,000 limit was plainly met, at least with respect to Francis, at the time of the administrative hearing. And based on the evidence, neither claimant had an income sufficient to meet their ordinary and necessary expenses without relying on their savings. *See generally*, POMS GN §§ 02250.120 and 02250.130.[7] The ALJ's suggestion that they could meet their expenses with student loans is inconsistent with POMS GN 02250.115(A)(2), which provides that "[d]uring recovery, if a person goes into debt to meet his/her ordinary and necessary living expenses, recovery will defeat the purpose of title II at that time."

The Court does not disagree with the general principle that college tuition may not be an "ordinary and necessary" expense within the meaning of 20 C.F.R. § 404.508. *See also* POMS GN 02250.120(B). But the record does not establish whether the college expenses contemplated by the claimants and Judy included tuition, or just ordinary living expenses incurred while attending college. And, in fact, the Court need not speculate, because the record establishes that the claimants' income was not sufficient to meet their

---

[7] The Court can find nothing in the statutes or regulations suggesting that earning *capacity*, as opposed to actual income or assets, is the standard for determining whether recovery would defeat the purpose of Title II.

- 6 -

ordinary and necessary living expenses. Whether they might have had other educational expenses is beside the point.

The Court's finding on this issue would, standing alone, require reversal of the Commissioner's decision. But to make sure that the issues are clear for the SSA and on further review (if any), the Court will also consider whether recovery of the overpayments would be against equity and good conscience. The Court finds that it would.

### 2. EQUITY AND GOOD CONSCIENCE

As previously noted, the Commissioner may not recover overpaid funds if to do so would be against "equity and good conscience." § 404(b). Among other things, recovery is against equity and good conscience if a person changed his or her position for the worse, or relinquished a valuable right, because of reliance on an overpayment. 20 C.F.R. § 404.509(a). Recovery is also against equity and good conscience if a person accepted the overpayment because of reliance on erroneous information from an official source within the SSA. 20 C.F.R. §§ 404.510a and 404.512(a). And a recovery may be against equity and good conscience if it would violate general principles of fairness and justice. *Groseclose v. Bowen*, 809 F.2d 502, 505 (8th Cir. 1987). The Court finds each of those circumstances present here.[8]

### (a) Change of Position/Relinquishment of Valuable Right

Recovery of an overpayment is against equity and good conscience when the claimant, "because of reliance upon a notice that a payment would be made or because of the overpayment itself[,]" "[c]hanged his or her position for the worse or relinquished a valuable right." 20 C.F.R. § 404.509(a). This means that the claimant must demonstrate a change in position or relinquishment of a valuable right, and a causal relationship between the benefits and the change or relinquishment. *See McConnell v. Dir., Office v. Workers' Comp. Programs*, 993 F.2d 1454, 1461 (10th Cir. 1993).

A claimant "changes position" when he takes new action or incurs a new expense or obligation. *Id.* Although the individual must actually incur the expense or obligation, the change need not be dramatic. *Id.* And the new act or obligation must be for the worse. *Id.* Finally, the new act or obligation must be linked to the award of benefits. *Id.* Thus, it is not enough to have simply spent the amount received. *Id.* Rather, the individual must show that he spent the money in a way in which he would not have but for the receipt of overpayments. *Id.*

---

[8] It is worth noting that an individual's financial circumstances are not material to a finding that recovery would be against equity and good conscience. 20 C.F.R. § 404.509(b); *Rodysill*, 2014 WL 1099686, at *4.

In this case, the record suggests that the overpaid money was simply spent on ordinary expenses. But the record also establishes—and there is no reason to question—that Judy was intent on preserving the claimants' savings for their college expenses. While simply spending the money is not a change for the worse—in fact, it could be considered a change for the better— Judy changed position for the worse in this case because she paid expenses that she would clearly have avoided had she known that the consequence would deprive the claimants of their savings. In other words, she "spent the money in a way in which [s]he would not have but for the receipt of overpayments." *Id.*

And in doing so, she also relinquished a valuable right—the right to decide intelligently whether to spend or save. *See, Green v. Sec'y of Health, Educ. & Welfare,* 218 F. Supp. 761, 764 (D.D.C. 1963); *Kilby v. Ribicoff,* 198 F. Supp. 184, 187 (D. Pa. 1961). Had the overpayments not occurred, Judy might have had to choose between spending less each month, invading the claimants' savings, or incurring debt to later repay. There is very little doubt, from the record, what she would have chosen: she specifically testified about how important it was for her to preserve the claimants' savings and avoid incurring debt. But now, the SSA is proposing to retroactively make that choice for her—to impose debts on the claimants which the SSA insists could be paid from their savings. In other words, Judy "lost a valuable right—the right to choose intelligently among various alternatives—through no fault of her own." *Green,* 218 F. Supp. at 764 (citing *Kirby,* 198 F. Supp. at 187).

The ALJ found it "unlikely" that anyone would rely on a "relatively small sum" such as the approximately $200 per month that each claimant was overpaid. The Court, however, does not find it unlikely that anyone dependent upon a fixed income might rely on such a sum, much less a widow supporting her minor children. And the record establishes such reliance. Because Judy changed her position (and that of the claimants) for the worse in reliance on the overpayments, and relinquished a valuable right in the process, recovery of the overpayments would be against equity and good conscience. *See* 20 C.F.R. § 404.509(a).

(b) Reliance on Erroneous Information from the SSA

Where an individual (or another person on behalf of an individual) accepts an overpayment because of reliance on erroneous information from an official source within the SSA, that individual is deemed to be without fault in accepting the overpayment. 20 C.F.R. § 404.510a. And in that situation, recovery should be waived because it is against equity and good conscience. 20 C.F.R. § 404.512(a). A routine notice is never cause for misinformation. POMS GN 02250.061(A)(1); *see, Rodysill,* 2014 WL 1099686, at *5. But a person is misinformed when she actively sought information which

subsequently proved to be incorrect. POMS GN 02250.061(A)(1). And if development of the record does not preclude a finding of misinformation and the beneficiary's detailed allegation is consistent with the facts of the case, any doubts are to be resolved in favor of finding that the beneficiary did receive misinformation. POMS GN 02250.061(B)(3).

And those principles have been found to apply to facts comparable to those presented in this case. *See*, *Russell v. Heckler*, 866 F.2d 638, 640 (3d Cir. 1989); *Traczynski v. Sec'y of Health & Human Servs.*, 843 F.2d 1392, 1988 WL 30053, at *1-2 (6th Cir. 1988) (unpublished table decision); *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1044-45 (2d Cir. 1984); *Viehman v. Schweiker*, 679 F.2d 223, 228-29 (11th Cir. 1982); *Dorman v. Harris*, 633 F.2d 1035, 1040 (2d Cir. 1980). Judy clearly explained to the SSA, and to the ALJ, that she had contacted the SSA on several occasions regarding the claimants' payments and had been told that they were correct. And she plainly relied on that misinformation in continuing to accept overpayments on the claimants' behalf. But for whatever reason, the ALJ did not consider whether 20 C.F.R. §§ 404.510a and 404.512(a) were applicable.

Because the ALJ did not directly address this issue, the Court has considered whether to remand the case to the Commissioner for express findings. *See, e.g., Valente*, 733 F.2d at 1044-45; *Viehman*, 679 F.2d at 228-29; *Dorman*, 633 F.2d at 1040. But the Court does not find it necessary to do so in this case. At no point during the administrative proceedings did the ALJ, or any other representative of the SSA, question Judy's account. Before this Court, the Commissioner has accepted Judy's claim that she "made inquiries to SSA, attempting to determine the accuracy of payments." Filing 16 at 3; case no. 4:13-cv-3063 filing 14 at 3. And as noted above, where the record is consistent with a beneficiary's testimony, any doubts should be resolved in favor of finding that the beneficiary actually did receive misinformation. *See* POMS GN 02250.061(B)(3). So, the Court finds that the Commissioner has conceded the accuracy of Judy's testimony and evidence regarding the misinformation she received from SSA representatives. *See McConnell*, 993 F.2d at 1463. The Court is able to reach a conclusion on the record presented, and the Court believes that "'this case has gone far enough.'" *See Jefferson v. Bowen*, 794 F.2d 631, 634 (11th Cir. 1986); *see also Rini v. Harris*, 615 F.2d 625, 626 (5th Cir. 1980).

Because Judy accepted overpayments on the claimants' behalf in reliance on repeated misinformation from official SSA sources, recovery of the overpayments would be against equity and good conscience. *See* 20 C.F.R. §§ 404.510a and 404.512(a).

- 9 -

(c) General Principles of Fairness and Justice

Although the SSA has, through administrative regulations, set forth some circumstances in which recovery of an overpayment would be against equity and good conscience, the SSA's regulations are not exclusive. The prohibition on recovery when it "would be against equity and good conscience" is statutory, *see* § 404(b), and the Eighth Circuit has explained that the narrow interpretation given to that phrase in the administrative regulations does not preclude applying the "common, ordinary meaning of the phrase." *Groseclose,* 809 F.2d at 505.

The word "equity" "'denotes the spirit and habit of fairness and justness.'" *Id.* The term "conscience" means "'the sense of right or wrong together with a feeling of obligation to do or be that which is recognized as good.'" *Id.* This is language of "'unusual generality'" that, the Eighth Circuit said, "'necessarily anticipates that the trier of fact, instead of attempting to channelize his decision with rigid and specific rules, will draw upon precepts of justice and morality as the basis for his ruling.'" *Id.* (quoting *Gilles v. Dep't of Human Res. Dev.,* 521 P.2d 110, 116 (Cal. 1974)).

And although the precise contours of this language are unclear, *see id.* at 506, it is hard for the Court to see how it has any meaning at all if it does not apply in this case. Judy was a widowed immigrant raising four children on a fixed income. When notified of an increase in the claimants' benefits—money she surely could have used—she instead questioned the SSA, repeatedly, about whether the payments were correct. And she was assured that they were. But years later, the SSA changed its mind, and decided that the claimants' college funds could be used to compensate it for its mistake. There would be nothing fair, just, or good in that result. *See id.* at 505. As previously explained, the Court has already found that recovery of these overpayments would defeat the purpose of Title II, and would be against equity and good conscience because the claimants' position was changed for the worse as a result of the overpayments, and because they were accepted in reliance on misinformation from the SSA. But even if this case did not fit neatly within those recognized regulatory exceptions, the Court finds that recovery of the overpayments would be against equity and good conscience as those terms are commonly understood. *See Groseclose,* 809 F.2d at 505-06. And the Court cannot find substantial evidence in the record to support a contrary conclusion.

IT IS ORDERED:

1. The Commissioner's decisions are reversed.

2. These cases are remanded to the Commissioner pursuant to sentence four of § 405(g).

3. The Commissioner is directed to waive recovery of overpayments received by the claimants or their representative payee, and refund any sums already recouped from the claimants or their representative payee.[9]

Dated this 7th day of April, 2014.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge

---

[9] The Court notes that in her initial denial of Francis' request for waiver, the claims representative identified the "person(s) liable" as Francis *and* "Representative Payee, Judy Wiles." T112. The Court's determination in these cases with respect to Francis and Francella has equal force with respect to Judy as their representative payee, and any benefits that she might be due.